# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-1490/1492

_____

| | | |
|---|---|---|
| Jack Gross, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| FBL Financial Services, Inc., | * | |
| | * | |
| Defendant, | * | |
| | * | |
| FBL Financial Group, Inc., | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| Iowa Farm Bureau Federation; Farm | * | |
| Bureau Mutual Insurance Company; | * | |
| William Oddy, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: November 1, 2007
Filed: May 14, 2008 (Corrected May 14, 2008; June 3, 2008)

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

FBL Financial Group (FBL) appeals a jury verdict in favor of Jack Gross, an employee who alleged that FBL violated the Age Discrimination in Employment Act (ADEA) by demoting him because of his age in 2003. FBL challenges the final jury instructions adopted by the district court, the district court's decision to exclude certain testimony, and the court's denial of FBL's motions for judgment as a matter of law. Gross cross-appeals the district court's order denying an award of attorney's fees. Because we conclude that the jury was not instructed correctly on a material issue, we reverse and remand for a new trial.

I.

Jack Gross was born in 1948. He has worked at FBL Financial Group since 1987. He was promoted up the ranks in 1990, 1993, 1997, and 1999, arriving ultimately at the position of Claims Administration Vice President. During a company reorganization in 2001, Gross was reassigned to the position of Claims Administration Director. His job responsibilities did not change, but Gross viewed this reassignment as a demotion, because it reduced his points under the company's point system for salary grades. In 2003, FBL reassigned Gross to the position of Claims Project Coordinator. At that time, many responsibilities associated with the Claims Administration Director position were transferred to a new position, entitled Claims Administration Manager, which was assigned to Lisa Kneeskern, an employee in her early forties. Gross's new Claims Project Coordinator position had the same salary points and pay grade as Kneeskern's position, but Gross contends that the reassignment was a demotion, because Kneeskern assumed the functional equivalent of Gross's former position, and his new position was ill-defined and lacked a job description or specifically assigned duties.

Gross brought suit in April 2004, alleging that FBL demoted him in 2003 because of his age, in violation of the ADEA. After a five-day trial, a jury found in favor of Gross, and awarded him $46,945 in lost compensation. During trial, the

district court excluded testimony from FBL's vice president of claims concerning information he had received from Gross's co-workers regarding Gross's performance. The court also overruled FBL's objections to final jury instructions, including those that set forth the elements of the claim and the burdens of proof, and denied FBL's motion for judgment as a matter of law. After trial, the district court denied FBL's renewed motion for judgment as a matter of law based on sufficiency of the evidence, and FBL's motion for a new trial based on the alleged evidentiary errors. These matters give rise to the present appeal.

## II.

We consider first FBL's objection to the final jury instructions concerning the elements of the claim and the burden of proof. The ADEA makes it unlawful for an employer to take adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a). This prohibition was "derived *in haec verba* from Title VII," *Lorillard v. Pons*, 434 U.S. 575, 584 (1978), which makes it unlawful to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

The Supreme Court, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), addressed the burdens of proof and persuasion that apply to a plaintiff's claim that he was discriminated against "because of" an enumerated factor under Title VII. Given the similarity of language between Title VII and the ADEA, we have applied both decisions to our analysis of claims under the ADEA. *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997); *see also Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1164 (8th Cir. 1985) (applying *McDonnell Douglas* to an ADEA case, "[b]ecause the ADEA grew out of Title VII . . . and because much of the language of the ADEA parallels that of Title VII").

*McDonnell Douglas* established a burden-shifting framework for evaluating claims of discrimination. Under this framework, a plaintiff must first establish a prima facie case of discrimination, which creates a rebuttable presumption of a statutory violation, and shifts the burden of *production* to the employer. The employer must rebut this presumption by producing a legitimate, non-discriminatory reason for its actions. When it does so, the presumption disappears, and "the sole remaining issue is discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation omitted). The burden of persuasion remains with the plaintiff throughout this analysis. *Id.*

*Price Waterhouse* was a splintered decision that addressed the proper approach to causation where an employer is motivated by both permissible and impermissible considerations. We have held that Justice O'Connor's opinion concurring in the judgment is the controlling opinion that sets forth the governing rule of law. *See Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 724 (8th Cir. 2001). According to this rule, to justify shifting the burden of persuasion on the issue of causation to the defendant, a plaintiff must show "by direct evidence that an illegitimate factor played a substantial role" in the employment decision. *Price Waterhouse*, 490 U.S. at 275 (O'Connor, J., concurring in judgment). "Direct evidence" for these purposes is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Thomas*, 111 F.3d at 66 (internal quotation and brackets omitted). It does not extend to "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." *Price Waterhouse*, 490 U.S. at 277 (O'Connor, J., concurring in judgment).

When a plaintiff makes the requisite showing of direct evidence, the "burden then rests with the employer to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate

-4-

factor." *Id.* at 276. Under this approach, a district court should receive all of the evidence in a case, and then determine "whether the *McDonnell Douglas* or *Price Waterhouse* framework properly applies to the evidence before it." *Id.* at 278. If a plaintiff fails to present "direct evidence" that an illegitimate criterion played a "substantial role" in the employment decision, then the case should be decided under *McDonnell Douglas* framework, and the burden of persuasion should remain at all times with the plaintiff. *Id.* at 278-79.

The district court in this case charged the jury that Gross had the burden to prove that (1) FBL demoted Gross to Claims Project Coordinator on January 1, 2003, and (2) that Gross's age was "a motivating factor" in FBL's decision to demote Gross. Final Jury Instruction No. 11. The instruction continued that the jury's verdict must be for FBL, however, "if it has been proved by a preponderance of the evidence that defendant would have demoted plaintiff regardless of his age." *Id.*

Under our court's application of *Price Waterhouse*, this instruction was not correct. The *Price Waterhouse* rule calls for a shift in the burden of persuasion only upon a demonstration by *direct* evidence that an illegitimate factor played a *substantial role* in an adverse employment decision. *See* 490 U.S. at 275 (O'Connor, J., concurring in judgment); *Erickson*, 271 F.3d at 724. The disputed instruction, however, provided that if Gross proved by any evidence – direct or otherwise – that age was "a motivating factor" in the employment decision, then the burden shifted to FBL to prove that its decision would have been the same absent consideration of Gross's age.[1] Gross conceded that he did not present "direct evidence" of

---

[1]Our court concluded in *Glover v. McDonnell Douglas Corp.*, 981 F.2d 388, 394-95 (8th Cir. 1992), that there was no material difference between the phrases "substantial role" and "motivating factor," although *Glover* was vacated on other grounds by the Supreme Court, *see* 510 U.S. 802 (1993), and our court's subsequent opinion in *Glover* did not expressly reaffirm the analysis of the previous opinion, which has no precedential value. *See Glover v. McDonnell Douglas Corp.*, 12 F.3d 845, 848 n.3 (8th Cir. 1994). It is unnecessary to consider the issue here.

discrimination, (Appellant's App. 596), so a mixed motive instruction was not warranted under the *Price Waterhouse* rule. Gross's claim should have been analyzed under the *McDonnell Douglas* framework. The burden of persuasion should have remained with the plaintiff throughout, and the jury should have been charged to decide whether the plaintiff proved that age was the determining factor in FBL's employment action. *See Rockwood Bank v. Gaia*, 170 F.3d 833, 842-43 (8th Cir. 1999).

Gross contends that there was no error, because the Civil Rights Act of 1991 and the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), supersede *Price Waterhouse* and our precedents applying *Price Waterhouse* to the ADEA. Section 107 of the 1991 Act amended Title VII by adding § 2000e-2(m): "Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). This section does supersede *Price Waterhouse* and its requirement of "direct evidence" in the context of Title VII claims, and it makes "motivating factor" the touchstone of the analysis for liability. To obtain a jury instruction under § 2000e-2(m), therefore, a plaintiff need only present sufficient evidence of any kind for a reasonable jury to find that one of the enumerated criteria was "a motivating factor" for an employment practice. *Desert Palace*, 539 U.S. at 101.

We conclude, however, that § 2000e-2(m) does not apply to claims arising under the ADEA. By its terms, the new section applies only to employment practices in which "race, color, religion, sex, or national origin" was a motivating factor. When Congress amended Title VII by adding § 2000e-2(m), it did not make a corresponding change to the ADEA, although it did address the ADEA elsewhere in the 1991 Act. *See Lewis v. Young Men's Christian Assoc.*, 208 F.3d 1303, 1305 & n.2 (11th Cir. 2000) (per curiam). Accordingly, the Third Circuit has held that "the Civil Rights

Act of 1991 does not apply to ADEA cases," and it continues to apply the *Price Waterhouse* framework in that context. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512 n.3 (3d Cir. 2004). The Eleventh Circuit concluded that the 1991 Act did not supersede *Price Waterhouse* as applied to ADEA retaliation claims. *Lewis*, 208 F.3d at 1305. The Fourth Circuit has reasoned that "ADEA mixed-motive cases remain subject to the burden-shifting rules of *Price Waterhouse*," *EEOC v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 164 n.2 (4th Cir. 2004), and has suggested (without holding) that the requirement of direct evidence still applies, noting that "maintaining the higher evidentiary burden in *Price Waterhouse* for ADEA claims is not implausible, given that age is often correlated with perfectly legitimate, non-discriminatory employment decisions." *Mereish v. Walker*, 359 F.3d 330, 340 (4th Cir. 2004). *See also Smith v. City of Jackson*, 544 U.S. 228, 240 (2005) (observing that "[w]hile the relevant 1991 amendments expanded the coverage of Title VII, they did not amend the ADEA or speak to the subject of age discrimination," and holding that "the Court's pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA" insofar as the scope of disparate-impact liability is concerned); *cf. Norbeck v. Basin Elec. Power Coop.*, 215 F.3d 848, 852 (8th Cir. 2000) (holding that the 1991 Act does not apply to retaliation claims).

Gross argues nonetheless that the decision in *Desert Palace* shows that the *Price Waterhouse* analysis no longer should govern his ADEA claim. Gross relies in particular on a Fifth Circuit decision, *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312-13 (5th Cir. 2004), which applied the analysis of *Desert Palace* to claims under the ADEA. *Rachid* held that because the relevant language in the ADEA – "*because of* such individual's age" – is "silent as to the heightened direct evidence standard," a plaintiff need not present "direct evidence" of discrimination to receive a mixed-motives analysis for an ADEA claim.[2]

---

[2]Insofar as summary judgment is concerned, *Rachid* is inconsistent with our circuit precedent. The Fifth Circuit in *Rachid* concluded that *Desert Palace*, which involved jury instructions in a Title VII case, dictated a change in the standard for

We are not persuaded that *Desert Palace* dictates a modification of our precedents regarding the ADEA. *Desert Palace* did hold that the *Price Waterhouse* framework is inapplicable to claims arising under Title VII and § 2000e-2(m). But the Court began its analysis by specifying that the case presented the "first opportunity to consider *the effects of the 1991 Act* on jury instructions in mixed motive cases." 539 U.S. at 98 (emphasis added). The Court then rejected the employer's argument that the 1991 Act did nothing to abrogate Justice O'Connor's opinion in *Price Waterhouse* (assuming that opinion is controlling), because the employer's contention was "inconsistent with the text of § 2000e-2m." *Id*. The Court observed that § 2000e-2m requires only that the plaintiff "demonstrat[e]" that the employer used a forbidden consideration, that the 1991 Act explicitly defines the term "demonstrates," and that the text of the new statute thus left "little doubt that no special evidentiary showing" – such as "direct evidence" – is required. *Id*. at 99.

While *Desert Palace* gave weight to the fact that § 2000e-2m, on its face, "does not mention, much less require, that a plaintiff make a heightened showing through direct evidence," *id*. at 98-99, the opinion focused on the particular text of the 1991 Act and the effects of that statute on jury instructions in mixed motive cases. When the Court previously addressed statutory text comparable to the ADEA in *Price Waterhouse* – "*because of* such individual's . . . sex," 42 U.S.C. §§ 2000e-2(a)(1), (2) (emphasis added) – the result was a fragmented decision from which our court adopted Justice O'Connor's concurring opinion as the controlling rule. The Court in *Desert Palace* declined to address which opinion in *Price Waterhouse* was controlling, 539 U.S. at 98, or to revisit *Price Waterhouse*'s interpretation of a statute, unadorned by § 2000e-2m, that prohibits discrimination "because of" an enumerated

summary judgment decisions under the ADEA. Our court has held, however, that because *Desert Palace* involved jury instructions after a trial, the decision does not affect our court's analysis of motions for summary judgment under Title VII, much less under the ADEA. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

factor. Even if some of the analysis in *Desert Palace* may seem inconsistent with the controlling rule from *Price Waterhouse*, the Court did not speak directly to the vitality of this previous decision, and it continues to be controlling where applicable. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). Our cases have concluded that because *Price Waterhouse* interpreted language identical to that found in the ADEA, we should follow the *Price Waterhouse* rule in ADEA cases. *Desert Palace* does not undermine the rationale of these decisions. We thus conclude that the *Price Waterhouse* rule continues to govern mixed motive instructions in an ADEA case.[3]

Under our court's interpretation of *Price Waterhouse*, the final instruction in this case was not correct. Because the instruction shifted the burden of persuasion on a central issue in the case, the error cannot be deemed harmless. *M.M. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir. 2008); *West Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782, 785 (8th Cir. 2006). Accordingly, we reverse and remand for a new trial.

## III.

We briefly address the other instructional and evidentiary issues raised by FBL, because they may recur in a new trial. *See Andrews v. Neer*, 253 F.3d 1052, 1062 (8th Cir. 2001).

---

[3]Even were we to accept Gross's argument that *Desert Palace* undermines the *Price Waterhouse* distinction between "direct" and other evidence for purposes of the ADEA (as opposed to Title VII), that conclusion would not necessarily support the disputed jury instruction in this case. We would be left to consider the meaning of "because of such individual's age" anew, without any distinction between direct and other evidence, but also without the "motivating factor" standard for liability set forth in § 2000e-2m, and without the corresponding partial affirmative defense of 42 U.S.C. § 2000e-5(g)(2)(B).

FBL requested that the district court give a final instruction to the jury that included this sentence: "Defendant is entitled to make its own subjective personnel decisions, absent intentional age discrimination, *even if the factor motivating the decision is typically correlated with age, such as pension status, salary or seniority.*" The court's final instruction included only the first half of this sentence, omitting the italicized clause.

We do not think the district court's instruction on this point was an abuse of discretion. "The form and language of jury instructions are committed to the sound discretion of the district court so long as the jury is correctly instructed on the substantive issues in the case." *White v. Honeywell, Inc.*, 141 F.3d 1270, 1278 (8th Cir. 1998) (internal quotation omitted). The court's formulation allowed FBL to argue that it demoted Gross for any reason "absent intentional age discrimination." The court was not required to list examples of such reasons in a jury instruction.

FBL also appeals the district court's decision to exclude testimony from FBL's vice president of claims, Andy Lifland, about complaints that he heard from Gross's coworkers about Gross's performance in the workplace. In a post-trial order, the court agreed with FBL that our precedent allows testimony about such complaints when the employer shows that it took action on the basis of the information. *See Crimm v. Mo. Pac. R.R. Co.*, 750 F.2d 703, 709 (8th Cir. 1984). The court defended its ruling, however, on the ground that the record at trial, including FBL's offer of proof, was insufficient to establish that Lifland received and relied on the complaints. As such, the dispute now seems focused on whether FBL laid a sufficient foundation for the presentation of Lifland's testimony, not on the legal question whether Lifland's proposed testimony would be inadmissible hearsay if there were adequate foundation for it. FBL will have a new opportunity to lay an adequate foundation in a new trial, and we do not think it would be productive to offer an opinion at this time concerning the sufficiency of the previous offer of proof.

FBL also contends that the district court should have granted judgment as a matter of law in its favor.  Because we remand the case for a new trial, we need not consider whether there was sufficient evidence for a hypothetical jury, properly instructed, to return a verdict in favor of Gross.  *See Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523, 526 (8th Cir. 2000); *Hauser v. Krupp Steel Producers, Inc.*, 761 F.2d 204, 206 n.1 (5th Cir. 1985).  We also need not consider Gross's cross appeal concerning attorney's fees.

For the foregoing reasons, we reverse and remand for a new trial.

_____