Randy J. DEVITT, Plaintiff,

v.

John E. POTTER, Postmaster General, et al., Defendants.

James S. Carriere, Plaintiff,

v.

William Henderson, Postmaster General, et al., Defendants.

Nos. A3–01–137, 03–01–47.

United States District Court, D. North Dakota, Southeastern Division.

Nov. 21, 2002.

Dennis D. Fisher, Bruce A. Schoenwald, Stefanson, Plambeck, Foss & Fisher, Moorhead, MN, for Plaintiffs.

Shon Hastings, U.S. Attorney's Office, Daniel E. Phillips, Schneider, Schneider & Schneider, Fargo, ND, Dorothy E. Hill, Peter Herman, Cohen, Weiss & Simon, LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

### I. Introduction

Before the Court are motions for summary judgment[1] submitted by defendant United States Postal Service ("USPS")(docs.# 24, # 54-1) and defendant National Association of Letter Carriers ("NALC")(docs.# 23, # 55). Plaintiffs, who are letter carriers employed by the USPS, bring the instant actions seeking redress for the alleged harassment and retaliation they suffered as a result of their support for a female letter carrier. Plaintiffs also assert claims against their union, NALC. Plaintiffs' actions were consolidated for trial. As articulated below, Defendants' motions for summary judgment are GRANTED.

### II. Background

The USPS's Prairiewood Facility in Fargo, North Dakota provides the setting for the incidents relevant to the case before the Court. According to Plaintiffs, Bonnie Jensen, a female letter carrier, was the target of sexual harassment. After observing the harassment directed against Jensen, Plaintiffs spoke up as witnesses on her behalf and provided testimony in an EEO proceeding instituted by Jensen.

Plaintiffs claim that as a result of this support for Jensen they became targets of intimidation and harassment by both man-agement and union stewards.[2] They allege this continuous intimidation and harassment created a hostile work environment, which USPS management did nothing to correct.

Plaintiffs describe a mob mentality at the Prairiewood Station where other carriers were encouraged to make derogatory remarks to Plaintiffs about their disabilities and their sexual or religious orientations. Plaintiffs attempted to file grievances but those individuals responsible for the harassment were either union stewards or former union stewards.

At various times, Devitt overheard his co-workers "trash-talking" on the workroom floor. Specifically, Plaintiffs cite numerous incidents over a two year period to support the case now before the Court. These incidents are noted below:

• In August of 1999, USPS employees began to shun Carriere and Devitt supposedly for their support of Jensen. Carriere was given the nickname "Big Bad Jim" or "Big Bad James."

• On November 18, 1999, Carriere and letter carrier Larry Ibach had an oral confrontation on the workroom floor. Both parties received job discussions for their role in the incident. However, Carriere expressed dissatisfaction with the resolution.

• On December 19, 1999, USPS Supervisor Mike Griffin pushed and berated Devitt after Devitt was observed talking to other carriers. Neither Griffin nor Devitt were disciplined over the incident.

• On December 29, 1999, plaintiff Devitt and Karl Polloch engaged in a heated ex-

---

1. USPS also submitted a motion to dismiss (doc. # 54-2).

2. The Court dismissed Jensen's action, finding the claims against individuals were preempted by Title VII and the claims against the

USPS were barred on the grounds that she failed to exhaust her administrative remedies. *Jensen, et al., v. Henderson, et al.,* No. A3-00-163 (D. N.D. filed Nov. 11, 2000).

change. NALC investigated the incident and proposed no discipline for either party. On June 13, 2000 Devitt filed an unfair labor practice charge against the union for breach of the duty of fair representation concerning the December 29th incident and alleging a continuing violation. The NLRB dismissed the charge and the subsequent appeal.

• On March 11, 2000, plaintiff Devitt and supervisor Ken Severn were involved in a heated confrontation concerning Devitt's work performance.

• On May 27, 2000, plaintiff Carriere found a Knights of Columbus bumper sticker on his government vehicle. At some point, Carriere also found rubber bands, cardboard trays, and ripped up pink cards in his letter case. Carriere is unaware of who placed these items on his vehicle and in his letter case.

• On June 13, 2000, Devitt and Carriere filed an unfair labor practice charge against NALC regarding the November and December 1999 incidents. The NLRB found the charge untimely and found the disciplinary settlement fair.

• On June 29, 2000, Devitt crumpled up a sign-in sheet which would document that he had watched a video on sexual harassment. Devitt received a job discussion as a result of his conduct.

• On July 5, 2000, Carriere and Devitt mailed an open letter to members of NALC stating that Karl Palloch, Thomas Greene, Larry Ibach, and Gregg Sachow harassed Bonnie Jensen. Greene became upset with the letter and confronted Carriere. After an investigation, both Carriere and Greene were given job discussions.

• On July 21, 2000, Devitt and Polloch were involved in a "stare and glare" incident. A couple days later management attempted to investigate the incident. While investigating, Severn allegedly became angry with Devitt because of his insubordination, grabbed him by the arm and ordered him to go home.

• On July 24, 2000, plaintiff Carriere approached union steward Dennis Zimdars asking him to investigate the July 21st incident between Devitt and Polloch. NALC officers told Carriere he could not file a grievance on behalf of Devitt.

• On September 5, 2000, Devitt and Carriere filed another unfair labor practice charge against NALC alleging a breach of the duty of fair representation in regards to the July 2000 incidents.

• On September 7–8 & 28, 2000, union officials met with USPS management to discuss the proposed discipline to Devitt. As a result of the meeting the USPS management dropped the matter and did not discipline Devitt.

• On September 28, 2000, the NLRB dismissed the unfair labor practice charge against NALC.

• On February 22, 2001, Carriere sent USPS Manager Jan Olson an e-mail message complaining that Sachow and Ibach used language in reference to religion and Jesus Christ that Carriere found offensive. The incident was investigated, Ibach was cleared, but Sachow received a disciplinary letter.

• On March 19, 2001, the instant action was filed before this Court. On March 21, then defendant Palloch, made a threatening hand gesture towards Carriere. After an investigation, the matter was dropped by management.

• On September 20, 2001, Thomas Greene and Devitt exchanged words about a "Beetle Bailey" cartoon in Greene's case that stated "the sky is falling."

• On October 24, 2001, letter carriers were watching a mandatory video on anthrax. While watching the video, letter

carrier Hoffner threw several Tootsie Rolls and one hit Carriere. Carriere reported the incident and Hoffner apologized stating he intended to hit someone else. Thereafter, Carriere and Palloch exchanged angry words.

● On October 27, 2001, Carriere and letter carrier Bruce Nelson exchanged words over Nelson's statement that Carriere did not need any assistance.

● USPS investigated the events of October 24 and 27 and issued disciplinary letters to Hoffner, Palloch, Nelson, and Carriere. NALC filed grievances on behalf of Hoffner, Palloch, and Nelson and, as a consequence, their discipline was reduced to mere job discussions. However, Carriere indicated that he wanted to handle his grievance himself, and then failed to make a timely appeal.

● On March 27–28, 2002, Devitt and Carriere were not permitted time off to prepare and attend their depositions. NALC filed a grievance on their behalf. On May 8, 2002, the dispute resolution team resolved the grievance and determined that Devitt and Carriere were not entitled to time off.

● On October 20, 2002, Carriere awoke to discover that the mailbox at his residence was destroyed by a pipe bomb. Despite Carriere's suspicion, there is no evidence to link this incident to the current action.

## III. Discussion & Legal Analysis

Before the Court are motions for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides for the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, a party moving for summary judgment must demonstrate to the Court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With this standard in mind, the Court begins its analysis.

### A. Claims Against USPS

#### 1. *Exhaustion of Administrative Remedies*

Defendants contend this Court lacks subject matter jurisdiction over the present case because Plaintiffs failed to exhaust their administrative remedies. Defendants argue that Plaintiffs failed to initiate contact with an EEO counselor within 45 days of the alleged discriminatory incidents as required by 29 C.F.R. § 1614.105(a)(1).

Plaintiffs counter by arguing that the time requirements set forth for Title VII claims are not jurisdictional, and thus are subject to waiver, tolling and estoppel. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–94, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The USPS concedes that the 45 day requirement is not a jurisdictional prerequisite to file suit in federal court, but it asserts that exhaustion of this administrative prerequisite is a condition to a waiver of the United States' sovereign immunity. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 94, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

■ The Court agrees with all parties. First, the Court agrees that complying

with the 45 day requirement is a prerequisite to obtaining a waiver of sovereign immunity. *Id.* However, the Court also agrees with Plaintiffs as they correctly observe that the 45 day requirement is subject to equitable relief such as tolling or estoppel. *Id.* at 95–96, 111 S.Ct. 453.

■ The question then becomes whether Plaintiffs are entitled to equitable relief. A court must grant equitable relief sparingly. *Id.* at 96, 111 S.Ct. 453. Equitable relief should only be granted in those situations "where the claimant has actively pursued his judicial remedies by filing defective pleadings during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin, 498 U.S. at 96, 111 S.Ct. 453. The Court finds the conditions necessary for granting equitable relief are not present.

The Court cannot stop its analysis here, however, because Plaintiffs further maintain that the 45 day period has not expired because the discrimination is on-going, and thus constitutes a continuing violation. Plaintiffs claim the separate incidents in and of themselves failed to put them on notice of the discrimination, and they became aware of the discrimination only after the cumulative effect of the conduct was experienced.

■ The Court agrees that Plaintiffs' cause of action necessarily lends itself to a continuing violations theory because harassment and retaliation claims consist of a series of events actionable only in the aggregate. Cf. *Kimzey v. Wal–Mart Stores,* 107 F.3d 568 (8th Cir.1997). The only requirement necessary to maintain a Title VII claim using a continuing violations theory is that some violation must have occurred within the 45 day time limitation to initiate contact with the EEO. See *United Air Lines v. Evans,* 431 U.S.

553, 555, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Gipson v. KAS Snacktime Co.,* 171 F.3d 574 (8th Cir.1999).

With respect to plaintiff Carriere, the 45 day contact period ran from April 4, 2000 through May 19, 2000. No incident occurred within this time period, but on May 27, 2000, Carriere discovered a Knights of Columbus bumper sticker on his postal vehicle. This incident, however, occurred after contact with the EEO Counselor was initiated. Thus, Carriere's claims are time-barred; however, the Court will continue to analyze the merits of his claims throughout this Order.

As to plaintiff Devitt, the 45 day contact period ran from June 13, 2000 through July 28, 2000. On June 29, 2000, Devitt crumpled up a sign in sheet which would document that he had watched a video on sexual harassment. Devitt received a job discussion as a result of his conduct. On July 21, 2000, Devitt and Polloch were involved in a "stare and glare" incident. A couple days later management attempted to investigate the incident. While investigating, Severn allegedly became angry with Devitt because of his insubordination, grabbed him by the arm and ordered him to go home. These incidents, especially the July 21, 2000 incident, appear sufficient to jump the exhaustion of administrative remedies hurdle.

2. *Title VII: Sexual, Religious, Disability–Based Discrimination*

■ Plaintiffs' complaint alleges sexual, religious and disability based discrimination in violation of Title VII. This is a relatively new claim considering Plaintiffs made no reference to sexual, religious, or disability based discrimination in submissions to the EEO. On their EEO Complaint, Plaintiffs checked the box for "Re-

taliation", but left the "Religion," "Sex" and "Disability" boxes blank.

These facts are analogous to those in *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir.1994), where the plaintiff claimed race discrimination in her judicial complaint, but did not check the race discrimination box on the EEO form. In *Williams*, the court held that the plaintiff did not properly exhaust her administrative remedies pertaining to race discrimination, and affirmed the district court's grant of summary judgment on this claim. *Id.*

██ Turning to Plaintiffs' more substantive concerns, the Court finds their Title VII discrimination claims lack merit. First, Plaintiffs offer little evidence of religious-based harassment. Offhand comments Plaintiffs interpret as sacrilegious and a supervisor's isolated comment "and you call yourself a Christian" do not amount to actionable religious harassment. Second, Plaintiffs offer no legally significant evidence of disability-based harassment. Plaintiffs cannot establish they are disabled within the meaning of Title VII. Plaintiff also admits that his supervisors and presumably other employees did not know of this disability. Most importantly, Plaintiffs admit they were not discriminated against because of a disability. Finally, Plaintiffs offer no evidence of sexual harassment directed at any person other than Jensen. Plaintiffs cannot recover for sexual harassment directed at Jensen. Plaintiffs failed to exhaust their administrative remedies, plus their claims lack merit, thus the Title VII religious, sexual, and disability-based claims are barred.

3. *Title VII Retaliation (As to All Defendants)*

██ Plaintiffs also assert a Title VII retaliation claim. To establish a prima facie case for retaliatory discrimination un-

der Title VII, Plaintiffs must show that: (1) Plaintiffs engaged in a statutorily protected activity; (2) Plaintiffs suffered an adverse employment action; and (3) a causal connection existed between the adverse employment action and the protected activity. See 42 U.S.C. § 2000e–3a.

██ In the present case, Plaintiffs fail to satisfy the second element as they cannot demonstrate any adverse employment action. Plaintiffs have not suffered changes in pay, benefits, seniority, or responsibility as a result of the alleged harassment. Not everything that makes an employee unhappy constitutes actionable adverse action. *Manning v. Metro. Life Ins. Co.*, 127 F.3d 686, 692 (8th Cir. 1997). Disrespect, ostracization, loss of status and prestige, and change of duties or working conditions are not adverse employment actions. *Id.* at 692–93. Additionally, discussions, reprimands, discipline, and letters of warning without more are also not adverse employment actions. Cf. *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th Cir.1999).

Plaintiffs rely on a Second Circuit case, *Richardson v. New York State Dept. of Correctional Service*, 180 F.3d 426, 446 (2d Cir.1999), for the proposition that the adverse employment element may be established by a showing of unchecked retaliatory co-worker harassment. The court stated that this unchecked harassment could cause an employee to suffer a materially adverse change in the terms or conditions of employment. *Id.*

The Eighth Circuit, however, interprets the phrase "adverse employment action" narrowly. In *Floyd v. State of Missouri Dep't of Soc. Serv., Div. of Family Serv.*, 188 F.3d 932, 938 (8th Cir.1999), the Eighth Circuit rejected claims of co-worker retaliatory harassment because the claims did not amount to an adverse em-

ployment action as the employee suffered no reduction in salary, title or benefits.

Plaintiffs cite *Kim v. Nash Finch*, 123 F.3d 1046, 1060 (8th Cir.1997) for the proposition that "retaliatory conduct may consist of action less severe than outright discharge." This case does not support Plaintiffs' cause because Kim clearly states that retaliatory conduct must still materially effect working conditions. *Id.* A reduction in salary, title or benefits is required to be material. *Id.* (citing *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994)). In the present case, Plaintiffs offer no evidence of a reduction in salary, title or benefits as a result of co-worker retaliatory harassment.

The Court finds compelling the Eighth Circuit's opinion in *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958 (8th Cir.1999). In Scusa, the plaintiff brought a Title VII Retaliation charge complaining of incidents involving teasing, yelling, fist shaking, snotty and rude comments, profanity, hateful looks, dirty jokes, shunning, and car vandalism, among other events. *Id.* at 963 n. 2–4. The court noted these facts alone are insufficient to show an adverse employment action against the plaintiff because she suffered no diminution in her title, salary or benefits. *Id.* at 868–69. The court declared the standards for judging hostility must be sufficiently demanding to ensure that Title VII does not become a "general civility code." *Id.* at 966 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citations omitted)). Here, like in Scusa, the conduct of USPS employees is juvenile and perhaps mean-spirited but

does not climb to a level of conduct sufficient to give rise to a Title VII Retaliation claim. Thus, the Title VII Retaliation claims against USPS and NALC are without merit.

### B. Claims Against NALC

#### 1. Breach of Duty of Fair Representation and Breach of Collective Bargaining Agreement

■■■ Plaintiffs bring a claim for breach of the collective bargaining agreement against USPS, and a claim for breach of the duty of fair representation against NALC. Each cause of action arises under section 301 of the Labor Management Relations Act (L.M.R.A.), and when these actions are combined it is referred to as a "hybrid action." *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 155, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). This "hybrid" claim is governed by a six-month statute of limitations period. *Id.* This six-month period applies equally to employers such as USPS and unions such as NALC. See *Abernathy v. USPS*, 740 F.2d 612, 614–17 (8th Cir.1984) (stating that a six-month statute of limitations period governs breach of collective bargaining agreement actions against the USPS by USPS employees); *Scott v. UAW, Local 879*, 242 F.3d 837, 839 (8th Cir.2001)(stating that a union member asserting that the union breached its duty must do so within six months). The six-month period begins once an employee "should reasonably have known of the union's alleged breach." *Evans v. Northwest Airlines, Inc.*, 29 F.3d 438, 441 (8th Cir.1994).[3]

---

**3.** The prerequisite to filing an action for breach of collective bargaining agreement "is a demonstration that the Union breached its duty of fair representation." *United Parcel Service v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Once the employee can prove the union breached its duty

of fair representation, the employee may sue the employer directly. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570, 96 S.Ct. 1048 (1976). The Court will, then, only analyze the duty of fair representation claim because, as explained below, Plaintiffs cannot maintain a duty of fair representation claim against

Here again, Plaintiffs assert a continuing violations theory. However, unlike harassment and retaliation claims, breach of the duty of fair representation claims can arise as a result of a single discrete act. In fact, it is well settled that the continuing violations doctrine is not applicable in duty of fair representation cases. *Local Lodge No. 1424 v. N.L.R.B.*, 362 U.S. 411, 422, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960)(stating the applicability of the sixmonth statute of limitations period cannot be avoided by invoking the doctrine of continuing violations); *Metz v. Tootsie Roll Ind.*, 715 F.2d 299, 305–06 (7th Cir.1983).

Plaintiffs also contend that the six-month statute of limitations period is subject to waiver, tolling and estoppel. However, this contention has already been rejected by this Court. See September 5, 2001 Memorandum and Order at 15 n. 6. (doc. # 24) (citing *Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 550 (7th Cir.1987); see also *Aarsvold v. Greyhound Lines, Inc.*, 724 F.2d 72, 73 (8th Cir.1983)(noting that the filing an unfair labor practice charge does not toll the statute of limitations period on a duty of fair representation claim)).

The pivotal issue for this Court is the determination of when Plaintiffs "should reasonably have known of the union's alleged breach," triggering the beginning of the limitations period. *Evans*, 29 F.3d at 441. The filing of unfair labor practice charges conclusively demonstrates Plaintiffs' awareness of NALC's alleged breach. *Washington v. Serv. Employees Intern. Union*, 130 F.3d 825, 826 (8th Cir. 1997). Plaintiffs filed unfair labor practice charges concerning the incidents now before this Court on June 13, 2000, and September 5, 2000. Thus, at the very

NALC; thus, Plaintiffs cannot maintain a breach of collective bargaining action against

latest, the six-month statute of limitations period expired on March 5, 2001.

Plaintiff Carriere filed his action on March 19, 2001, and Plaintiff Devitt filed his action on November 15, 2001, both were filed later than March 5, 2001, thus both are time-barred.

2. *Intentional Infliction of Emotional Distress, Civil Conspiracy & Civil Rights–42 U.S.C. §§ 1985(1), 1985(3) & 1986*

By September 5, 2001 Order, this Court dismissed plaintiff Carriere's Title VII, retaliation, Section 1985(3) and state law claims against NALC. The Court adopts the reasoning set forth in the September 5, 2002 Order regarding the Title VII, retaliation, Section 1985(3) and state law claims advanced by plaintiff Devitt against NALC. The Court also adopts the reasoning regarding the remaining state law or Section 1985(3) claims, if any, against USPS. The Court finds these claims lack merit.

Section 1985(1) and Section 1986 claims remain against NALC and USPS. By its September 5, 2002 Order, the Court dismissed the Section 1985(1) claims against individual defendants. The Court adopts the reasoning set forth in that Order and finds that Title VII preempts Section 1985(1) as to USPS. Because there is no viable Section 1985 claim, there can be no Section 1986 claim against USPS.

As to NALC, the Court rejected its motion to dismiss the Section 1985(1) claim because a number of legal and factual issues were not sufficiently addressed. Most notably, the Court stated that it could not make a determination because the factual record was too scant. The

USPS.

parties have now submitted numerous exhibits and affidavits. After reviewing the factual record, the Court finds no evidence of a conspiracy between the USPS and NALC to deprive Plaintiffs from holding their positions as letter carriers or discharging their duties.[4] Plaintiffs have simply not met their burden to produce evidence sufficient to withstand a motion for summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

## IV. Conclusion

For the above mentioned reasons, Defendants' motions for summary judgment are GRANTED (docs.# 23, # 24, # 54–1, # 55).

IT IS SO ORDERED.

---

4. The Court declines to rule at this time whether a postal carrier is a federal officer for purposes of Section 1985(1), or whether the USPS can be a conspirator against such federal officer. The Court does note, however, that Plaintiffs fail to cite sufficient case law in support of their 1985(1) claim.