**Dennis N. WIEMANN, Plaintiff,**

v.

**INDIANOLA COMMUNITY SCHOOL DISTRICT, Defendant,**

No. CIV.4:01–CV–10324.

United States District Court,
S.D. Iowa,
Central Division.

May 6, 2003.

Neil A. Barrick, Barrick Law Office, Des Moines, IA, for plaintiff.

David H. Luginbill, Ahlers & Cooney, PC, Des Moines, IA, for defendant.

## ORDER

LONGSTAFF, Chief Judge.

The Court has before it defendants's motion for summary judgement, filed February 23, 2003. Plaintiff resisted the motion March 17, 2003, and defendant filed a reply memorandum on March 24, 2003. The motion is now considered fully submitted.

## I. BACKGROUND

The following facts either are not in dispute or are viewed in a light most favorable to plaintiff. Plaintiff Dennis N. Wien-mann is a former industrial technology instructor employed by defendant, the Indianola Community School District. Plaintiff was employed by the school district from January 1980 until the day he resigned his position on December 13, 1999. Plaintiff instructed at both the junior and senior high school levels. Plaintiff also worked as a farm mechanic during the summers from 1991 through 1996.

In the fall of 1992, plaintiff suffered an outbreak of what was later diagnosed as *pityriasis rubra pilaris* ("PRP")—an uncomfortable and unpleasant skin condition. During the outbreak, plaintiff developed a reddish coloration, and lost the outer layers of his skin. In addition, plaintiff's feet bled when he walked. Once the condition was diagnosed and treated, however, plaintiff's symptoms subsided.

Plaintiff estimates that he has developed a slight rash approximately once per year since 1992, but that he has successfully alleviated his symptoms through medication and/or ointment. He has never again suffered an outbreak similar to that which occurred in the fall of 1992.

At the end of 1993, because PRP is exasercbated by exposure to heat and humidity, plaintiff requested and defendant supplied an air conditioner in the junior high classroom in which he taught drafting and printing. Plaintiff therefore only spent one period of the day, teaching wood shop, in an unairconditioned room.

Plaintiff transferred back to the high school to teach industrial arts at the beginning of the 1996–97 school year. The principal of the high school at that time and thereafter was John Monroe. Plaintiff's relationship with Monroe was strained from the beginning due to what plaintiff considered to be Monroe's "arbitrary nature," "attitude," and overall "refus[al] to change."

In his first two years back at the high school, plaintiff split his time between drafting and industrial arts classes, including those that took place in a wood shop. During this time period, plaintiff never mentioned to his supervisors any concern about his skin condition, or a possible need for special scheduling of his classes.

Toward the end of the 1997–98 school year, plaintiff learned that next year's course schedule would require him to teach more classes in the wood shop area and less in the air conditioned drafting area. Plaintiff complained initially that he did not feel well-prepared to teach the wood shop classes, although all such class assignments were within the industrial arts curriculum.

Subsequently, during an April 30, 1998 faculty meeting, plaintiff informed Monroe of his skin condition and provided Monroe a copy of a 1993 letter from plaintiff's dermatologist. In response to plaintiff's complaint, Monroe suggested that plaintiff consider pursuing disability retirement, or words to that effect.

Plaintiff did not address the scheduling issues with Monroe or other District administrators again until July 1998, during another faculty meeting. During the July 1998 meeting, plaintiff made a presentation in which he argued that current industrial arts teacher assignments were not beneficial for the students based on teachers' skills. He also produced information on his skin condition, and reiterated his desire to work exclusively in an air-conditioned environment. In response to plaintiff's request, District Superintendent Thomas Narak, Ph.D., suggested that plaintiff use the air-conditioned room located within the wood-shop whenever plaintiff felt so inclined.

In a memorandum dated August 24, 1998, plaintiff informed Monroe that he would be wearing shorts to school on hot and humid days. Monroe responded the next day and told plaintiff he could wear shorts *if* he had a doctor's note. Plaintiff did not provide Monroe or the district with a doctor's note because he "didn't feel [he] needed one." [1]

On August 28, 1998, plaintiff filed a complaint with the Iowa Civil Rights Commission ("ICRC"), which was then cross-filed with the Equal Employment Opportunity Commission ("EEOC"), alleging both age and disability discrimination. Specifically, plaintiff alleged that the school district failed to accommodate his special needs and that the school district discriminated against him when it required that he provide a doctor's note articulating his need to wear shorts to school.

Plaintiff taught the first day of school during the academic year 1998–1999, but took the following nine weeks off for outpatient treatment for depression. On October 27, 1998, plaintiff was released back to work without restrictions.[2] Plaintiff admits he did not ask for any modification of his job upon his return to work.

During the remainder of the 1998–1999 school year, plaintiff missed a number of

---

1. The record reflects that plaintiff's dermatologist, Dr. Andrew K. Bean, wrote a letter to Monroe dated August 27, 1998. In this letter, Dr. Bean reiterates that plaintiff's skin condition "can be significantly aggravated by exposure to heat and humidity. To keep from aggravating his condition, his local environment should be adequately ventilated and preferably air-conditioned." Plaintiff does not state whether this letter was an attempt to provide the district with notification of plaintiff's need to wear shorts whenever he deems necessary.

2. The Court notes plaintiff does not base his claim for disability discrimination on depression, nor does he believe his depression has limited his ability to work or to function.

days due to what he described as "flare-ups" of his skin condition. Plaintiff is uncertain whether he saw a doctor or needed medication for these episodes.

On November 11, 1998, plaintiff received a written reprimand and a follow-up memorandum dated November 19, 1998, for allegedly conducting himself in an unprofessional manner. Plaintiff received a teacher evaluation on May 3, 1999, which indicated that he failed to meet district standards in 28 of the 56 evaluation areas.

On July 27, 1999, plaintiff filed a second complaint with the ICRC, which was cross-filed with the EEOC, alleging that his May evaluation constituted retaliation for filing the first civil rights complaint in August of 1998.

For the 1999–2000 school year, plaintiff was again given teaching assignments that included teaching a portion of his classes in the wood shop. During the fall of 1999 plaintiff again took periods of sick leave. During some of these periods of sick leave, the school district learned that plaintiff taught classes at Vatterott College in Des Moines, Iowa. When plaintiff returned to work in December of 1999 he received a written reprimand and a five-day suspension from Monroe for inappropriate use of sick leave. Plaintiff resigned his position as industrial arts teacher on December 13, 1999, claiming he "could no longer work with the administration." Plaintiff retained new employment as a project designer with a construction firm and began work in this capacity in January of 2000.

On May 26, 2000, plaintiff amended his second administrative complaint by adding the following language: "I was constructively discharged by Respondent on December 13, 1999, because of these bases, physical disability, mental disability, and in retaliation for me having filed [the August 1998 administrative complaint]." App. to Defendant's Motion for Summary Judgment ("Defendant's App.") at 51.

On October 30, 2000, plaintiff received a letter from the ICRC stating that his original complaint was dismissed and administratively closed. On November 30, 2000, plaintiff received a second letter from the ICRC indicating that his second complaint, as amended, also had been dismissed and administratively closed by the agency.

At some point during the month of December 2000, plaintiff was involved in a car accident. As a result of this accident, plaintiff contends that he suffers from a complete loss of memory of all events occurring during the months of November and December of 1999.

In a letter dated February 14, 2001, the EEOC notified plaintiff that the EEOC adopted the findings of the ICRC with respect to plaintiff's original complaint and had also dismissed the complaint. This letter further stated that plaintiff had the right to sue defendant in either state or federal court within ninety (90) days of the receipt of the letter. In a letter dated February 26, 2000, the EEOC notified plaintiff that the EEOC dismissed his second complaint, as amended, and included the same "right to sue" language.[3]

Plaintiff filed his initial complaint in this Court on May 25, 2001. Count I and II of plaintiff's complaint allege that defendant discriminated against him based on his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1211, et seq., and the Iowa Civil Rights Act ("ICRA"), IOWA CODE §§ 216 et seq., respectively. Counts III and IV allege

---

3. The ICRC issued its own "right to sue" letters on subsequent dates. Whether plaintiff filed the present district court action within the time frame allowed under state law is not at issue, however.

that defendant discriminated against plaintiff based on plaintiff's age in violation of the Age in Employment Act ("ADEA"), 29 U.S.C. §§ 623, *et seq.*, and the ICRA.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

"Summary judgment should seldom be used in employment discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994). Summary judgment should be granted only on the rare occasion where no dispute of fact exists and there is only one conclusion. *Id.* (citations omitted) (quotations omitted). The Court should not grant defendants' summary judgment motion "unless the evidence could not support any reasonable inference for the nonmovant." *Id.* (citations omitted).

### B. Whether Plaintiff's Claims are Time–Barred

#### 1. Plaintiff's Federal Age Discrimination Claim

Before discussing the merits of plaintiff's various claims, the Court must address timeliness issues raised by defendant with regard to plaintiff's state and federal claims. First, defendant contends plaintiff's federal age discrimination claim, which was raised only in his first administrative complaint, must be dismissed due to the fact he failed to file the present action within the statutory 90 day window. This Court agrees.

Both the ADA and ADEA require claimants to file a cause of action in federal district court within 90 days of receiving their "right-to-sue" letters from the EEOC. *See* 42 U.S.C. § 12117(a) (provision of ADA incorporating 90–day time period set forth for Title VII claims in 42 U.S.C. § 12117(a)); 29 U.S.C. § 626(e) (establishing 90–day time period for ADEA claims). As set forth above, the EEOC issued its right-to-sue letter with regard to plaintiff's first administrative complaint on February 17, 2001. Defendant's App. at 45. Plaintiff has not presented any evidence tending to show he received the letter any later than February 17, 2001.

To preserve the claims set forth in the administrative complaint, plaintiff should have filed his complaint in this Court on or before May 18, 2001. In actuality, he did not file the present action until May 25, 2001.

Admittedly, the Eighth Circuit has held that the 90–day limitations period under 42 U.S.C. § 2000e–5(f)(1) is not jurisdictional, and therefore subject to equitable tolling. *Hill v. John Chezik Imports,* 869 F.2d

1122, 1123 (8th Cir.1989). In general, however, "equitable tolling is a remedy reserved for circumstances that are 'truly beyond the control of the plaintiff.'" *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 797 (8th Cir.1998) (citing *Hill*, 869 F.2d at 1124).

■ The Supreme Court has suggested that equitable tolling would be appropriate under the following circumstances: 1) when a claimant received inadequate notice of the right-to-sue; 2) when a motion for appointment of counsel is pending; 3) when the court has caused the claimant to believe he has complied with all statutory prerequisites; or 4) when affirmative conduct on the part of defendant has "lulled the plaintiff into inaction." *Id.* (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). None of these scenarios is present in the case at bar. Plaintiff's allegation that he, or his counsel, was confused by the differing limitations periods applicable to his state and federal claims is insufficient to invoke the doctrine. Accordingly, count III of plaintiff's complaint, which alleges age discrimination in violation of the ADEA, must be dismissed as untimely.

#### 2. Plaintiff's Claim of Retaliation Based on November 11, 1998 Reprimand

The narrative portion of plaintiff's second administrative complaint alleges that defendant retaliated against him for filing his first administrative complaint in part through a written reprimand issued on November 11, 1998. *See* Defendant's App. at 49. Although not pled in plaintiff's complaint, in an abundance of caution, defendant has moved to dismiss this claim as outside the 180–day window set forth in Iowa Code § 216.15(12) ("A claim under this Chapter shall not be maintained unless a complaint is filed with the commission within one hundred eighty days after the alleged discriminatory or unfair practice occurred."). Plaintiff does not resist defendant's motion on this basis. Accordingly, defendant's motion is granted to the extent the November 11, 1998 reprimand will not serve as a basis for alleged discriminatory retaliation with regard to plaintiff's state law claims.[4]

#### C. Plaintiff's State Law Age Discrimination Claim

■ Before addressing plaintiff's remaining state law age discrimination claim on the merits, the Court notes that plaintiffs' claims of age (and disability) discrimination under the ICRA are evaluated under the same standards as his parallel claims under the applicable federal statute. *See, e.g., Montgomery v. John Deere & Co.*, 169 F.3d 556, 558 n. 3 (8th Cir.1999) (citing *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir.1997)). Plaintiff contends his resignation on December 13, 1999 resulted in part from age discrimination. The ICRA makes it unlawful for an

---

**4.** Timely filing of an administrative complaint with the federal civil rights agency, the Equal Employment Opportunity Commission ("EEOC"), also is a prerequisite to maintaining a federal claim of discrimination. *See, e.g., Owens v. Ramsey Corp.*, 656 F.2d 340, 342 (8th Cir.1981) (Title VII). Although the time period for filing with the EEOC ordinarily is 180 days, Congress extended the deadline to 300 days in instances where the individual has "initially instituted proceedings with a state or local agency with authority to grant or seek relief" from the alleged violation. 42 U.S.C. § 2000e–5(e). States that maintain these agencies, such as Iowa, are known as "deferral states." *See. e.g., Worthington v. Union Pacific R.R.*, 948 F.2d 477 n. 3 (8th Cir.1991). Accordingly, had he chosen to do so, plaintiff could have relied upon the November 1998 reprimand with regard to his federal claims.

employer to "refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of ... age ...." IOWA CODE § 216.6 An age discrimination plaintiff may rely either on direct or circumstantial evidence to prove that he or she has been the victim of unlawful discrimination. *See, e.g., Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332–33 (8th Cir.1996); *Vaughan v. Must, Inc.*, 542 N.W.2d 533, 538 (Iowa 1996).

1. Whether There is Direct Evidence of Age Discrimination

■ Plaintiff argues that Principal Monroe's suggestion that he should consider disability retirement, *see* Defendant's App. at 14, is direct evidence of discrimination and provides the pretext for subsequent reprimands. This Court does not agree. "The direct evidence required to shift the burden of proof is evidence of conduct or statements by persons involved in making the employment decision direct manifesting a discriminatory attitude, *of a sufficient quantum and gravity* what would allow the factfinder to conclude that attitude more likely than not was a motivating favor in the employment decision." *Erickson v. Farmland Industries, Inc.*, 271 F.3d 718, 724 (8th Cir.2001) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77, 109 S.Ct. 1775, 104 L.Ed.2d 268 (O'Connor, J., concurring)) (emphasis added); *Yates v. Douglas*, 255 F.3d 546, 548 (8th Cir.2001); *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir.1999). Statements made by a decisionmaker that a plaintiff was "stale," "set in his ways," "needed a

new focus," and that "You should have moved [on] five years ago," have all been held insufficient to constitute direct evidence of age discrimination. *Erickson*, 271 F.3d at 724–25. Following *Erickson*, the Court finds the suggestion that plaintiff ought to consider retirement, without more, does not amount to direct evidence that age had anything to do with the disciplinary measures later taken by Monroe due to plaintiff's documented improper conduct. *See id.* ("Making this comment into evidence of age animus requires an inference, and the comment therefore does not directly reflect an attitude of discrimination based on age."); *Browning v. President Riverboat Casino–Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir.1998) (evidence direct where no inference is necessary); *E.W. Blanch Co. v. Enan*, 124 F.3d 965, 970 (8th Cir.1997) (where comment made no direct reference to plaintiff's age, *Price Waterhouse* burden shifting is inappropriate).[5]

2. Indirect Evidence and *McDonnell Douglas* Burden–Shifting

■ Absent direct evidence of discrimination, courts employ the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Vaughan*, 542 N.W.2d at 538; *see also Madel v. FCI Marketing, Inc.*, 116 F.3d 1247, 1251 (8th Cir.1997); *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994) (applying *McDonnell Douglas* framework to ADEA claims). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of age discrimination. *Madel*, 116 F.3d at

5. To the extent that Monroe made the comment in response to plaintiff's statement that he had been an industrial arts teacher for over 18 years, the Court notes that: "Length of tenure, although it may correlate empirically with age, is not synonymous with age and therefore ... is not direct evidence of age-based evidence." *Erickson*, 271 F.3d. at 725; *Slathar v. Sather Trucking Corp.*, 78 F.3d 415, 418–19 (8th Cir.1996).

1251. A prima facie case in the present context—in which plaintiff was terminated or forced to resign—consists of the following elements: (1) that plaintiff is at least 40 years of age; (2) that a plaintiff is qualified for the position at issue; (3) that plaintiff was terminated or forced to resign; and (4) that defendant hired a person under the age of 40. *See, e.g., Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1164 (8th Cir.1985). When the prima facie case has been established, the employer bears the burden of producing evidence that it terminated plaintiff "for a legitimate, nondiscriminatory reason." *Madel,* 116 F.3d at 1251. The burden then shifts back to the plaintiff to prove that the reason provided by the employer was a pretext for discrimination. *Id.* (citing *Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994)). To meet this latter burden, courts have clarified that a plaintiff must not only establish an issue of fact as to whether the employer's reasons are pretextual, but must also " 'create[ ] a reasonable inference that age was a determinative factor in the adverse employment decision.' " *Id.* (citing *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d at 1336–37). As explained by the Eighth Circuit in *Ryther v. KARE 11,* 108 F.3d 832, 837 (8th Cir.1997) (en banc):

> [W]hen the employer produces a nondiscriminatory reason for its actions, the prima facie case no longer creates a legal presumption of unlawful discrimination. The elements of the prima facie case remain, however, and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff .... We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a

reasonable inference of age discrimination.

*Id.*

### a. Prima facie case of discrimination

In the present case, defendant argues plaintiff is unable to create a material issue of fact with regard to the third element of his prima facie case, that plaintiff was subjected to an adverse employment action. Because plaintiff was still employed by defendant during the time period covered by his first administrative complaint-the only complaint in which age discrimination was raised-he must rely exclusively on three written reprimands, Monroe's April 25, 1999 response to his request to wear shorts, and his May 3, 1999 performance evaluation to establish he was subjected to an adverse employment action with regard to Count IV of his complaint. *See* Defendant's App. at 56–70, 80–81, 83–95.

■ As noted by the Eighth Circuit: "Although actions short of termination may constitute an adverse employment action within the meaning of the statute, 'not everything that makes an employee unhappy is actionable adverse action.' " *Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997) (quoting *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359 (8th Cir.1997)). Assuming arguendo plaintiff's written reprimands and poor performance evaluation were in part motivated by age-related animus, absent evidence of "more tangible change in duties or working conditions," the reprimands and evaluation do not rise to the level of adverse employment action under the ICRA. *Id.; see also Cossette v. Minnesota Power & Light,* 188 F.3d 964, 972 (8th Cir.1999) ("At most, the evaluation resulted in a loss of status or prestige without any material change in [the plaintiff's] salary, position, or duties."); *Devitt v. Potter,*

234 F.Supp.2d 1034, 1041 (D.N.D.2002) ("[D]iscussion, reprimands, discipline, and letters of warning without more are also not adverse employment actions.").[6] Likewise, no reasonable jury could consider Monroe's requirement that plaintiff obtain a note from his physician in order to wear shorts to work to constitute a "material employment disadvantage."

### b. Conclusion regarding state law age discrimination claim

For the reasons outlined above, the Court finds plaintiff has failed to establish a material issue of fact as to whether he can establish his prima facie case of age discrimination under the ICRA. Summary judgment is granted in favor of defendant on count IV of plaintiff's complaint.

### D. Plaintiff's Claims of Disability Discrimination

Counts I and II of plaintiff's complaint allege defendant discriminated against plaintiff on the basis of disability in violation of the ADA and ICRA, respectively. As with his age discrimination claim, discrimination under the ICRA are evaluated under the same standards as his parallel claims under the applicable federal statute. *See, e.g., Montgomery v. John Deere & Co.,* 169 F.3d 556, 558 n. 3 (8th Cir.1999) (citing *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 616 (8th Cir.1997)); *Casey's General Stores, Inc. v. Blackford,* 661 N.W.2d 515, 518–19 (Iowa 2003). Similarly, disability claims under the ADA and ICRA also follow the *McDonnell Douglas*

burden-shifting framework. *See Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1134–35 (8th Cir.1999) (citing *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817); *Casey's General Stores, Inc.,* 661 N.W.2d 515, 518–19.

### 1. Whether Plaintiff is Statutorily Disabled

■ To establish a prima facie case of disability discrimination, plaintiff must demonstrate that: (1) he is disabled under the meaning of the ADA; (2) he is qualified to perform the essential functions of his position with or without accommodation; and (3) he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination. *Kellogg v. Union Pacific Railroad Co.,* 233 F.3d 1083, 1086 (8th Cir.2000); *Casey's General Stores, Inc.,* 661 N.W.2d 515, 518–19. In the present case, defendant contends plaintiff is unable to establish the first element, that he is disabled under the ADA or ICRA.

Disability is defined in relevant part under the ADA as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [or]

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).[7] In the present case, plaintiff attempts to establish disabil-

---

**6.** The Court notes that in *Sprenger v. Federal Home Loan Bank,* 253 F.3d 1106, 1113 (8th Cir.2001), the Eighth Circuit held in dicta that "a negative review *and* denial of a raise may constitute negative employment action." (Emphasis added). In the present case, however, plaintiff has failed to produce evidence his negative evaluation caused him to be denied a raise and/or suffer a "material change

in [his] salary, position, or duties." *Cossette,* 188 F.3d at 972 (citing *Ledergerber v. Stangler,* 122 F.3d 1142, 1144–45 (8th Cir.1997)).

**7.** The ICRA similarly defines disability as a "physical or mental condition of a person which constitutes a substantial disability." IOWA CODE § 216.2(5).

ity only through the first prong of § 12102(2). He does not purport to have a record of a disability, or contend that defendant regarded him as being disabled. *See* Plaintiff's Brief in Resistance to Motion for Summary Judgment at 5. Furthermore, plaintiff depends solely on his skin condition to show he is disabled. He does not suggest that his history of depression limits his ability to work or function in any way. Defendant's App. at 18.

■ With regard to the disabling nature of plaintiff's skin condition, the Court notes that: "Merely having an impairment does not make one disabled for purposes of the ADA. [A claimant] also need[s] to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Weber v. Strippit, Inc.,* 186 F.3d 907, 913–14 (8th Cir.1999); *Wooten v. Farmland Foods,* 58 F.3d 382, 385–86 (8th Cir.1995). "Major life activity" are defined in the applicable regulations to include: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). The use of the phrase "such as" indicates that the EEOC did not intend for the list to be exclusive, but rather, illustrative of the types of activities which the EEOC would consider to be "major life activities." *Krauel v. Iowa Methodist Medical Center,* 915 F.Supp. 102, 106 (S.D.Iowa 1995).

Although defendant does not question that plaintiff has been diagnosed with the skin condition *pityriasis rubra pilaris* ("PRP"), it does dispute that plaintiff's PRP substantially limits one or more major life activities. As noted by defendant, plaintiff has not had a major outbreak of PRP since the fall of 1992, Defendant's App. at 9, and has been able to quickly treat a developing rash with ointment and or medication. *Id.* He further admits that no physician has ever restricted him from employment because of his PRP, and that the condition in no way interferes with his ability to carry on his "activities of daily living." *Id.* at 18.

In resisting defendant's motion on this basis, plaintiff relies exclusively on his 1992 outbreak of PRP, arguing the fact his feet bled when walking substantially limited the major life activity of walking. The Court disagrees. In *Perkins v. St. Louis County Water Co.,* 160 F.3d 446, 448 (8th Cir.1998), the Eighth Circuit held that one or two isolated episodes of a disease that caused hearing loss were insufficient to find the condition *substantially limited* the major life activity of working. Similarly, in the present case, although plaintiff's PRP may have briefly affected his ability to walk in the fall of 1992, there is no evidence the PRP has interfered with his walking since that time. *See* Defendant's App. at 9. The fact PRP *might* be disabling for some individuals, or even for plaintiff on some unknown future occasion is insufficient to establish disability under the ICRA or ADA. *See, e.g., Orr v. Wal–Mart Stores, Inc.,* 297 F.3d 720, 724 (8th Cir. 2002) (court rejects diabetic's claim that he *could* suffer a substantially limiting impairment if he failed to "properly monitor and treat his diabetes"). As held by the Supreme Court in *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999): "A disability exists only where an impairment substantially limits a major life activity, not where it *might, could,* or *would* be substantially limiting if mitigating measures were not taken." (emphasis added) (additional internal citations omitted). The Court therefore concludes plaintiff has failed to create a material issue of fact as to whether he is "disabled" under the meaning of the ADA or ICRA.

### 2. Whether Defendant Reasonably Accommodated Plaintiff's Condition

■ Even assuming plaintiff had been able to establish statutory disability, defendant contends it nevertheless provided plaintiff with all reasonable accommodations. This Court agrees. The record shows that in 1993, when plaintiff first made a request, the school district placed an air conditioner in the room in which plaintiff spent the majority of his time. Defendant's App. at 10. After transferring back to the high school in 1996, plaintiff worked for two years without mentioning his condition, or a possible need for accommodation, to his supervisors. *Id.* at 19–20. In July 1998, when plaintiff formally requested that he be allowed to teach in an air-conditioned room, the district superintendent told plaintiff he could use the air-conditioned classroom inside the wood shop area. *Id.* at 16. Principal Monroe also agreed to allow plaintiff to wear shorts to school provided plaintiff could provide the district with documentation of medical necessity. *Id.* at 81. The fact plaintiff failed to provide the necessary documentation detracts from his claim he that such an accommodation was truly necessary.

### 3. Conclusion Regarding Plaintiff's Claims of Disability Discrimination

Because the Court finds plaintiff is unable to establish a material issue of fact as to whether he is disabled under the meaning of the ADA or ICRA, and if so, whether defendant failed to reasonably accommodate him, it need not address the remaining elements of plaintiff's prima facie case. Summary judgment is granted with regard to counts I and II of plaintiff's complaint.

### E. Retaliation

Although not pled as a separate count in his complaint, plaintiff alleges in his second administrative complaint that the disciplinary actions taken against him following his initial complaint filed with the ICRC were retaliatory. *See* Defendant's App. at 49. Both the ICRA and Title VII prohibit an employer from discriminating against an employee who has "opposed any practice made an unlawful employment practice" under either statute. 42 U.S.C. § 2000e–3(a); *see also* Iowa Code § 216.11(2).

■ Claims of retaliation under Title VII and the ICRA follow the same analytical framework as other discrimination claims. *See Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir.1997); *Hulme v. Barrett*, 449 N.W.2d 629, 633 (Iowa 1989). "To establish a prima facie case of retaliation, a plaintiff must show that he engaged in statutorily protected activity, that the defendant took adverse action against him, and a connection between the two." *Montandon v. Farmland Industries, Inc.*, 116 F.3d at 359 (internal citations omitted).

■ In the present case, the Court finds plaintiff has failed to create a material issue off fact as to whether he suffered show "adverse employment action." As explained with regard to plaintiff's age discrimination claim, above, a reprimand and/or negative employment evaluation, without evidence of a "material change in ... salary, position, or duties" does not establish retaliation under the meaning of either Title VII or the ICRA. *Cossette*, 188 F.3d at 972. Summary judgment is therefore granted to the extent plaintiff has pled a claim for retaliation.

### III. CONCLUSION

For the reasons outlined above, defendant's motion for summary judgment is granted in full. The Clerk of Court is

directed to enter judgment in favor of defendant and against plaintiff.

IT IS SO ORDERED.